1  JOSEPH P. RUSSONIELLO (CSBN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CSBN 163973)
3  Chief, Criminal Division

4  ALLISON MARSTON DANNER (CSBN 195046)
   Assistant United States Attorney
5
      450 Golden Gate Avenue, Box 36055
6     San Francisco, California 94102-3495
      Telephone: (415) 436-7144
7     FAX: (415) 436-7234
      Email: allison.danner@usdoj.gov
8
   Attorneys for the United States of America
9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          )   No.  CR 07-0634 MMC
                                        )
15          Plaintiff,                  )   UNITED STATES' SENTENCING
                                        )   MEMORANDUM
16       v.                             )
                                        )   Sentencing Date:  April 23, 2008
17  DANIEL HICKEY,                      )                     2:30 p.m.
                                        )
18          Defendant.                  )   Court:  The Honorable Maxine Chesney
    _____ )
19

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**TABLE OF CONTENTS**

2
Page No.

3  I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4
5  II. STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6  III.  GUIDELINES CALCULATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7  IV.  78 MONTHS IS A REASONABLE SENTENCE IN THIS CASE. . . . . . . . . . . . . . . . . . . 3
8

9      A.  Defendant Purposely Collected Thousands of Images of Child Pornography and
10        Stored Them on His Computer Hard Drive. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11     B.  Consumers of Child Pornography–Including the Defendant–Fuel
12        a Demand for Child Abuse of the Most Devastating Kind. . . . . . . . . . . . . . . . . 4

13
14     C.  Defendant's "Psychological Evaluation" Lacks Credibility and
        Is Irrelevant to this Court's Determination. . . . . . . . . . . . . . . . . . . . . . . . . . . 5
15

16     D.  Defendant's Age and Health Are Mitigating Factors. . . . . . . . . . . . . . . . . . . . 7

17     E.  Defendant's Sentence Must Afford Adequate Deterrence To
18        This Serious Crime. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19  V. THE GOVERNMENT REQUESTS THAT THIS COURT VIEW THE IMAGES FOUND
20     ON DEFENDANT'S COMPUTER BEFORE IMPOSING SENTENCE IN THIS CASE. . . 10

21
22  VI.  THIS COURT SHOULD REMAND DEFENDANT TO CUSTODY IMMEDIATELY
      AFTER SENTENCE IS IMPOSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
23

24  VII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

26

27

28

1

## TABLE OF AUTHORITIES

2
Page No.

3 **FEDERAL CASES**

4

5       *United States v. Borho*,
            485 F.3d 904 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

7       *United States v. Carty*,
            __ F.3d __, 2008 WL 763770 at *8 (9th Cir. 2008) (en banc). . . . . . . . . . . . . . . 4

8       *United States v. Fink*,
            502 F.3d 585 (6th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
9

10      *United States v. Goff*,
            501 F.3d 250 (3rd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9
11

12      *United States v. Goldberg*,
            491 F.3d 668 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
13

14      *United States v. Meiners*,
            485 F.3d 1211 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
15

16      *United States v. Pugh*,
            515 F.3d 1179 (11th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8, 9

17 **FEDERAL STATUTES**

18

19 18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Passim*

20 18 U.S.C. § 2252(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21 18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

22 18 U.S.C. § 2252(a)(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23 18 U.S.C. § 3143(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

24

25 **FEDERAL RULES**

26 U.S.S.G. § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
27

28

1

## I. INTRODUCTION

2    On November 28, 2007, defendant pleaded guilty to the indictment, which alleges one

3    count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  There was

4    no plea agreement.  Sentencing has been set for April 23, 2008.

5    Because defendant knowingly possessed thousands of images of child pornography on

6    his computer, because many of these images depict very young children subject to abuse of the

7    most serious kind, and because defendant has–by his own admission–engaged in this illegal

8    activity for years, the government respectfully requests that this Court sentence defendant to a

9    term of seventy-eight months, the low-end of the applicable Guidelines range.

10    ## II. STATEMENT OF FACTS

11    This investigation began with a phone call by Ms. Doe[1] on June 17, 2007 to the San

12    Francisco police department (SFPD).  (Presentence Report at ¶ 6 [hereinafter PSR].)  Ms. Doe,

13    who is fifteen years old and defendant's granddaughter, reported that she saw child pornography

14    on defendant's computer during the course of a weekend visit to his apartment.  (PSR ¶ 6.)  Ms.

15    Doe stated that she saw child pornography on defendant's computer while attempting to

16    download a picture from the internet.  (PSR ¶ 6.)  Ms. Doe also later saw defendant manipulating

17    a picture of child pornography on the computer while she was watching television in another

18    room of the apartment.  (PSR ¶ 7.)  Based on this information, SFPD received and executed a

19    state search warrant for defendant's computer.  (PSR ¶ 8.)  A review of Mr. Hickey's computer

20    revealed at least 5,000 images of child pornography saved on his computer hard drive in various

21    folders labeled "My Pictures," "Pictures Downloaded from AOL," and "Saved From Mail."

22    (PSR ¶ 8.)

23    The thousands of pictures collected by defendant include images of the most sadistic and

24    disturbing kind.  They include the following:

25    •  A female child, approximately 3-4 years old, is having a male penis forced in her mouth.

26       The child is crying.

27

28    [1]  Because Ms. Doe is a minor, her true name has not been used.  Ms. Doe's name is
contained in the Presentence Report in this case, which has been filed under seal.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- A female child, approximately 3-4 years old, is naked and tied to a bed. Her legs are spread out, exposing her genitals.

- A female child, approximately 5-6 years old, is lying on her back on a bed, holding her genitals open with her fingers. The word "slut" is written in red and circled on her stomach. The phrases "cut me" and "hurt me" are also written in red on her stomach.

- A female child, approximately 7 years old, is sitting naked on a chair, with her arms and legs bound to the back of the chair.

- An infant girl, approximately 4 months old, has her legs spread out, and a male adult penis is placed on her vagina.

After they executed the search warrant, SFPD contacted Child Protective Services (CPS). A CPS worker interviewed defendant and visited his home. Defendant told CPS that he has been viewing child pornography for three years and that he finds it "titillating." (Child Protective Services Report on Daniel Hickey, 7/19/07, attached hereto as Exhibit C (filed under seal) at 2 [hereinafter CPS Report].) Prior to the execution of the search warrant by SFPD, defendant and his son shared bunk beds in a bedroom, and his wife slept on the couch. (CPS Report at 2.) Defendant's mother- and father in-law slept in the other bedroom. Defendant said he had been viewing child pornography for three years. (CPS Report at 2.) Defendant's wife was aware that he viewed child pornography and had asked him to stop. (CPS Report at 3.)

Special Agent Gaztambide, the FBI agent investigating defendant's case, spoke on the morning of October 12, 2007 with defendant's daughter who is the mother of Ms. Doe, the granddaughter who originally saw the child pornography on defendant's computer. When she learned that defendant was aware of her and her granddaughter's involvement in the case, she became extremely upset. She stated that she is afraid of the defendant and is frightened that he might hurt her or her daughter. Defendant's doctor also describes defendant has having "anger management difficulties." (Letter of Dr. Shiplak to Judge Chesney, March 14, 2008, attached to Defendant's Sentencing Memo).

Defendant's extensive child pornography collection also includes boys, as well as girls.

(PSR ¶ 12.)  The National Center for Missing and Exploited Children has done an assessment of some of the images found on defendant's computer.  That report indicates that many of the images found on defendant's computer are of known victims of child pornography.  Several of these victims have provided victim impact statements, which the Probation Office has provided to this Court under seal.  In one of the letters submitted by the mother of a child whose picture was found on defendant's computer, for example, the mother writes "[m]y daughter is a real person.  She is exploited anew each and every time an image of her suffering is copied, traded or sold." (Letter of 2/20/06 at 3, submitted under seal by the Probation Office.)  Another child victim of child pornography whose image was found on defendant's computer writes "[E]very time some one else [sees] pictures or videos of me it feels like they are the ones who hurt me to begin with."  (Letter of JB, submitted under seal by the Probation Office.)

### III.  GUIDELINES CALCULATION

The government agrees with the guidelines calculations contained in the Presentence Report prepared by the Probation Office.  (PSR ¶¶ 22-35.)

| Base Offense Level: | 18 | U.S.S.G. § 2G2.2(a)(2) |
| Specific Offense | +2 | U.S.S.G. § 2G2.2(b)(2) (prepubescent minor) |
| Characteristics | +4 | U.S.S.G. § 2G2.2(b)(4) (sadistic/masochistic) |
| | +2 | U.S.S.G. § 2G2.2(b)(6) (use of computer) |
| | +5 | U.S.S.G. § 2G2.2(b)(7)(D) (600 or more images) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1 |
| **Total** | **28** | |

Defendant's criminal history category is I.  The applicable Guidelines range, therefore, is **78-97** months.  (PSR ¶ 35.)

### IV.  78 MONTHS IS A REASONABLE SENTENCE IN THIS CASE.

In determining the appropriate sentence in a criminal case, this Court must, first, calculate the sentence under the Guidelines and, second, evaluate the sentence for substantive

reasonableness in light of the factors set out in 18 U.S.C. § 3553(a).  *United States v. Carty,*__

F.3d __, 2008 WL 763770 at *8 (9th Cir. 2008) (en banc).  In cases that are neither complex nor

unusual, "the Commission's recommendation of a sentencing range will reflect a rough

approximation of sentences that might achieve § 3553(a)'s objectives."  *Id.* (internal citations

and quotations omitted).  A Guidelines sentence will "usually be reasonable."  *Id.* at *6.

### A.  Defendant Purposely Collected Thousands of Images of Child Pornography and Stored Them on His Computer Hard Drive.

This case is neither complex nor unusual.  Defendant possessed thousands of images of

child pornography on his home computer; these images were saved on his computer hard drive in

folders labeled "My Pictures," "Pictures Downloaded from AOL," and "Saved From Mail."

Defendant's own granddaughter observed him graphically manipulating the images on his

computer.  Before his arrest in this case, defendant was an instructor in computer skills at a local

college.  There is no question here of incidental possession, of someone who unwittingly

accessed child pornography or simply viewed child pornography one time and then tried to get

rid of it.  Defendant purposefully sought out images of child pornography.  Defendant then

further manipulated these pictures on his own computer.  Defendant selected and saved an

image, for example, that shows a young girl, who is lying on her back on a bed, holding her

genitals open with her fingers, and who has the word "slut" and the phrases "cut me" and "hurt

me" written in red and circled on her stomach.

### B.  Consumers of Child Pornography–Including the Defendant–Fuel a Demand for Child Abuse of the Most Devastating Kind.

"The distribution of child pornography feeds an industry that causes physiological,

emotional and mental trauma to the child victims."  *United States v. Meiners*, 485 F.3d 1211,

1213 (9th Cir. 2007).  Indeed, the Ninth Circuit has held that child pornography trafficking is

"no less serious" than drug trafficking.  *Id.*

Consumers of child pornography fuel demand for the unlawful production of this

material.  "The greater the customer demand for child pornography, the more that will be

1  produced." *United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007).  As the Eleventh

2  Circuit has recently observed, "pornography poses an even greater threat to the child victim than

3  does sexual abuse or prostitution.  Because the child's actions are reduced to a recording, the

4  photography may haunt him in future years . . . a child who has posed for a camera must go

5  through life knowing that the recording is circulating within the mass distribution system for

6  child pornography." *United States v. Pugh,* 515 F.3d 1179, 1196 (11th Cir. 2008) (*quoting New*

7  *York v. Ferber*, 258 U.S. 747 (1982) (internal citations and authorities omitted)).  Even if

8  consumers of child pornography do not themselves molest children, their actions contribute to

9  the abuse of children.  "Children are exploited, molested, and raped for the prurient pleasure of

10  [defendant] and others who support suppliers of child pornography." *United States v. Goff,* 501

11  F.3d 250, 259 (3rd Cir. 2007).

12       In this case, the letters submitted by the victims of the pornography that defendant saved

13  on his computer bear out the devastating effects of child pornography.  As the mother of one of

14  the victims whose image was found on defendant's computer relates, "I've watched my daughter

15  transformed from a buoyant, cheerful child full of energy and enthusiasm, to an anxious and

16  fretful shadow of her former self."   (Letter of 2/20/06 at 3, submitted under seal by the

17  Probation Office.)

18       **C.  Defendant's "Psychological Evaluation" Lacks Credibility and Is Irrelevant to**
19       **this Court's Determination.**

20       In preparation for sentencing, defendant has procured an evaluation by a psychologist,

21  Jules Burstein.  (Report of Jules Burstein, Jan. 2, 2008, attached to Defendant's Sentencing

22  Memo [hereinafter Burstein Report].)  Mr. Burstein's report lacks credibility and is irrelevant to

23  the factors this Court is directed to consider under 18 U.S.C. § 3553(a).

24       Much of Mr. Burstein's report describes defendant's personal history, which appears to

25  have no connection with the questions defense counsel asked Mr. Burstein to address.  This

26  portion of the report is nothing more than a vehicle to repeat the same information about

27  defendant's upbringing that defendant related to the Probation Officer and which already appears

28

1  in the PSR.

2          Further, Mr. Burstein relied almost exclusively on self-reported information provided by

3  the defendant.  Some of this information is flatly untrue.  For example, defendant "denie[d] any

4  criminal justice history" prior to his 2007 arrest.  In fact, in 1986, defendant agreed to pretrial

5  diversion for having used U.S. Treasury checks issued to a deceased person.  (PSR ¶ 40; Letter

6  from United States Secret Service to the FBI, Oct. 22, 2007, attached hereto as Exhibit A.)

7          Other information is inconsistent with prior statements made by defendant.  For

8  example, in the interview with CPS, defendant said he is titillated by viewing child pornography.

9  (CPS Report at 2.)  In his interview with Mr. Burstein, however, defendant denied any sexual

10 arousal to minors.   It is hard to imagine why a person would collect over 5,000 images of child

11 pornography on his computer if this statement were true, but Mr. Burstein does not question

12 defendant's self-serving assertion.

13         In writing the report, Mr. Burstein spoke with defendant's daughter, defendant's wife, a

14 friend of the defendant, and a Mormon Bishop who has known the defendant for many years.

15 Mr. Burstein made no effort to contact the investigating agent or the prosecutor to secure any

16 other information.  Mr. Burstein did not view any of the image from Mr. Hickey's computer and

17 made no attempt to do so.  Further, Mr. Burstein provides no information about the scientific

18 reliability of the tests he conducted.

19         Most importantly, Mr. Burstein's conclusions–no matter how tenuous their basis–are

20 simply irrelevant to this Court's consideration.  Mr. Burstein states that defendant does not "pose

21 an imminent danger of molesting minors."  (Burstein Report at 10.)  Whether this assertion is

22 true or not, defendant is not charged with molesting minors.  "The federal penal code treats the

23 possession of child pornography and child abuse as distinct offenses."  *United States v. Pugh,*

24 515 F.3d 1179, 1193 (11th Cir. 2008); *United States v. Goff,* 501 F.3d 250, 259 (3d Cir. 2007)

25 (noting that, where a defendant is charged with child pornography possession but is not charged

26 with molestation "pointing out that he hadn't committed it is . . . irrelevant").  As the victim

27 impact statements in this case show, viewers of child pornography independently harm the

1    children depicted in the images.

2         The recidivist concern in this case, therefore, is about collecting child pornography–not

3    physical abuse of a child.  Here, Mr. Burstein's report is less helpful to the defendant.  The report

4    notes that defendant continued to view child pornography, even after he promised his wife that

5    he would stop.  (Burstein Report at 7.)  The report makes no predictions about defendant's

6    likelihood of reoffending with regard to child pornography.

7         As an appropriate response to defendant's crime, Mr. Burstein suggests that defendant

8    undertake a course of "couples therapy."  (Burstein Report at 12.)  It is hard to image a report

9    with as little understanding of the seriousness of the crime to which defendant has already

10   admitted his guilt than that produced by Mr. Burstein.

11        **D.    Defendant's Age and Health Are Mitigating Factors.**

12        As this Court will no doubt recall, the government sought defendant's pretrial detention

13   based, in part, on the government's concern about potential abuse of his child due to defendant's

14   unusual sleeping arrangements with his young son.  In this phase of the case, defendant stressed

15   his active involvement in his son's life.  Through his counsel, defendant described how he drove

16   the son to school, attended his sporting events, and helped him with his homework.  In addition,

17   before his arrest, defendant also worked as a teacher at a local community college and served as

18   a minister in his church.  This is a man, after all, who has been married four times, is married to a

19   woman twenty-nine years his junior, has a fourteen year-old son, and is apparently a major

20   figure in the life of his wife and parents-in-law.

21        Further, the letter provided by defense counsel from the owner of the building which

22   defendant currently manages describes a long list of duties which defendant currently performs

23   for him, including  "maintaining the appearance and cleanliness of the building . . tak[ing] in

24   large boxes and mail . . . and empty[ing] trash bins."  In addition, defendant lists the apartment

25   for rent, checks the credit history of potential tenants, takes care of plumbing issues, and hires

26   contractors to make repairs.  (Letter of William Joe, Feb. 29, 2008, attached hereto as Exhibit B.)

1    In contrast to this active and vigorous life, defendant now seeks to paint a picture of a

2    man on the verge of acute kidney failure.  Defendant essentially claims that any prison sentence

3    would constitute a death warrant.  To that end, defendant has produced letters from his doctors in

4    support of a lenient sentence in this case.  While the government expresses no view on these

5    doctors' medical expertise, these letters do not reflect an accurate understanding of defendant's

6    crime.  For example, the letter from Doctor Daroff, defendant's psychiatrist, describes

7    defendant's crime as a "lapse in judgment."  (Letter of Dr. Daroff to Judge Chesney, March 7,

8    2008, attached to Defendant's Sentencing Memo.)  Defendant's doctor from the Veteran's

9    Administration does not appear to have any particular knowledge of the medical facilities

10   available at any of the federal prisons and simply asserts that defendant's health cannot be

11   monitored "in a stressful environment like prison."  (Letter of Dr. Shiplak to Judge Chesney,

12   March 14, 2008, attached to Defendant's Sentencing Memo).

13   The government acknowledges that defendant has medical ailments–not surprising for a 77

14   year-old man.  For this reason, the government believes that a sentence at the low end of the

15   guidelines is reasonable in this case.

16   **E.    Defendant's Sentence Must Afford Adequate Deterrence To This Serious

17        Crime.**

18   The four major sentencing goals set out in 18 U.S.C. § 3553(a) are retribution (just

19   punishment), rehabilitation, incapacitation, and deterrence.  18 U.S.C. § 3553(a); *see also United

20   States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008).  Congress has repeatedly broadened the

21   proscriptions against child pornography and has amended the Guidelines several times to

22   increase the severity of the Guidelines applicable to child pornography.  *Pugh,* 515 F.3d at 1198

23   (detailing Congressional action with regard to child pornography).  With these actions, Congress

24   has underscored the gravity of the crime of possession of child pornography.  Defendant's

25   sentence should reflect the seriousness of the crime he has committed.

26   In addition, this Court should impose a sentence that adequately deters future potential

27   perpetrators of child pornography.  Deterrence is particularly compelling in the child

28

pornography context. *Id*. As the Seventh Circuit has stated

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded . . . . The greater the customer demand for child pornography, the more that will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg,* 491 F.3d 668, 672 (7th Cir. 2007) (internal citations omitted).

Several circuit courts have recently highlighted the importance of § 3553(a)'s directive to consider both the gravity of the offense and deterrence when imposing sentences in child pornography cases. In a series of recent decisions, courts of appeals have "consistently overturned zero-imprisonment or other sharply downward-varying sentences . . . on the ground that the resulting sentence were unreasonably lenient." *Pugh,* 515 F.3d at 1203 (reversing district court's imposition of a probatory sentence as unreasonable under *Gall* and *Kimbrough*)*; United States v. Fink,* 502 F.3d 585 (6th Cir. 2007) (vacating sentence of 70 months' imprisonment); *United States v. Goff,* 501 F.3d 250, 262 (3rd Cir. 2007) (vacating sentence of 4 months and 5 years' supervised release); *United States v. Goldberg,* 491 F.3d 668, 674 (7th Cir. 2007) (vacating sentence of one-day imprisonment and 10 years' supervised release); *United States v. Borho,* 485 F.3d 904 (6th Cir. 2007) (vacating sentence of 72 months' imprisonment and 5 years' supervised release).

Although defendant here was charged only with possession of child pornography, there is strong evidence that defendant also received child pornography. After all, it is hard to imagine how defendant could have possessed images on his computer without first having received them. Further, the child pornography found on his computer was saved in folders entitled, "My Pictures," "Pictures Downloaded from AOL," and "Saved From Mail." (PSR ¶ 8.) Receipt of child pornography carries a mandatory-minimum sentence of five years. 18 U.S.C. § 2252(a)(b)(1). It also carries a higher base offense level under the Guidelines than does possession. U.S.S.G. § 2G2.2(a)(2). The government is not suggesting that defendant should be subject to the higher penalties associated with receipt. As a practical matter, however, this Court

1    should consider that defendant must have actively sought out–and received–child pornography
2    to amass a collection of thousands of images.

3    ## V.  THE GOVERNMENT REQUESTS THAT THIS COURT VIEW THE IMAGES
4    FOUND ON DEFENDANT'S COMPUTER BEFORE IMPOSING SENTENCE IN THIS
     CASE.

5
6        In anticipation of sentencing, the United States respectfully requests that this Court review
7    the images that form the basis of this prosecution.  While undoubtedly appropriate in all cases
8    involving child pornography, this Court's review of the images is especially critical in this case,
9    due to the nature of the images.

10   ## VI.  THIS COURT SHOULD REMAND DEFENDANT TO CUSTODY IMMEDIATELY
11   AFTER SENTENCE IS IMPOSED.

12       Upon the pronouncement of defendant's sentence, the United States will move for his
13   immediate detention under 18 U.S.C. § 3143(b)(2).  This section specifically deals with "release
14   or detention pending appeal by the defendant," and in these circumstances provides that
15   detention is essentially mandatory:  "The judicial officer shall order that a person who has been
16   found guilty of an offense in a case described in subparagraph (A) . . . of subsection (f)(1) of
17   section 3142 [including child pornography felonies] and sentenced to a term of imprisonment,
18   and who has filed an appeal . . . be detained."  18 U.S.C. § 3143(b)(2).

19       Because child pornography felonies are "crimes of violence" under "subparagraph (A) . . .
20   of subsection (f)(1) of section 3142" the mandatory detention provisions are triggered.  *See*
21   § 3156(a)(4)(C) (defining "crime of violence" for purposes of the Bail Reform Act to include
22   "any felony under chapter . . . 110," which includes child pornography possession).

23       The only exception to § 3143(b)(2)'s mandatory detention provision is found in § 3145(c).
24   This section allows the release of someone in defendant's position only if:  (1) he can show by
25   clear and convincing evidence that he is neither a flight risk nor a danger to the community; and
26   (2) "it is clearly shown that there are exceptional reasons why such person's detention would not
27   be appropriate."  § 3145(c).  There are no exceptional reasons in this case why defendant's
28

detention is not appropriate.  Accordingly, the defendant should be remanded to the custody of the United States Marshal at the conclusion of his sentencing hearing.

## VII.  CONCLUSION

Because of the number of images in this case, because of the severity of the abuse depicted in these images, and because defendant's involvement with child pornography was both active and longstanding, defendant's conduct squarely falls within the kind of conduct targeted by 18 U.S.C. § 2252(a)(4).  Congress and the Sentencing Commission have determined that the appropriate sentencing range for this conduct, for a person with no criminal history as calculated under the Guidelines, is 78-97 months.  Because of defendant's age and health conditions, the government believes that a low-end guidelines sentence is appropriate in this case.  It is also a reasonable sentence in light of the factors set out in 18 U.S.C. § 3553(a), particularly just punishment and deterrence.

The government respectfully asks that this Court sentence defendant to a term of imprisonment of 78 months.  This sentence constitutes both an appropriate sentence under the guidelines and a substantively reasonable sentence in light of the factors set out in 18 U.S.C. § 3553(a).

DATED: April 15, 2008                               Respectfully submitted,

                                                    JOSEPH P. RUSSONIELLO
                                                    United States Attorney


                                                    _____/s/ Allison Danner_____
                                                    ALLISON M. DANNER
                                                    Assistant United States Attorney

# EXHIBIT A



# U.S. Department of Homeland Security
## UNITED STATES SECRET SERVICE

San Francisco Field Office                                October 22, 2007
345 Spear Street, Suite 530
San Francisco, CA 94105

Special Agent Binh T. Pham
Federal Bureau of Investigation
Oakland Resident Agency
180 Grand Avenue, Suite 1100
Oakland, CA 94612

Subject: Request for Information

This letter is pursuant to the 10/15/07 faxed request for information regarding Daniel
Marshall Hickey.

Daniel Hickey was a suspect in case # 408-750-50229, wherein he was accused of
forging and uttering U.S. Treasury checks issued to Fred Schilt, after Schilt was
deceased. Between 1983 and 1985, there were nine checks forged and negotiated,
totaling approximately $1,537.00.

On November 20, 1985, Daniel Hickey was interviewed by Special Agent Michael Levin
at the San Francisco Field Office. Hickey gave a written statement confessing to forging
and negotiating the Treasury checks in question.

On May 27, 1986, Daniel Hickey signed an agreement for Pretrial Diversion for a One
Count violation of Title 18 USC, Section 510 – Forgery/Uttering U.S. Treasury Check.
The case was handled by Assistant United States Attorney Floy E. Dawson, Northern
District of California.

On May 20, 1987, Daniel Hickey successfully completed his one year term of Pretrial
Diversion and was discharged from the supervision of the United States Probation Office.

If you have any additional questions, please contact SA John Dantin at 415/264-3743 of
the Financial Crimes squad.

Sincerely,

Jean A. Mitchell
Special Agent in Charge

# EXHIBIT B

William Joe
20 Citrus Ct.
Hillsborough, CA 94010
650-347-8281 (h)
650-577-9585 (cell)


Friday, February 29, 2008

Re: Dan Hickey, Resident/Manager, 2935 Clay St., San Francisco, CA,
    94115

To Whom It May Concern:

I own the 6-unit apartment building at 2935 Clay St., San Francisco.  Dan Hickey has
resided in the building continuously almost 40 years.
Dan is the manager of the building, and consequently, in exchange for his services as
manager, his rent is $900.00 per month.

Dan's duties include:  Maintaining the appearance and cleanliness of the building,
maintain building safety, keep the building in compliance with City Fire Codes, insure
the building remains safe from intruders, takes in large boxes and mail via FedEx, etc.,
and deliver to tenants, keeps a key file for tenants who lose their keys, sets timer on
indoor and outdoor building lights to coincide with amount of seasonal daylight, makes
small repairs to apartments when needed, sweeps out the garages periodically, empties
trash bins in lobby into recycling bins in the garage, mops lobby and stairwells, keeps
laundry room clean and laundry and dryer machines working properly.

Additionally, when we have a vacant apartment, Dan lists the apartment for rent on
Craig's List, checks credit and references of potential tenants. Insures that vacant
apartments are clean and attractive for new tenants. He takes care of plumbing issues in
all the apartment and hires contractors to make major repairs.
Dan, his wife and son, live in apartment #2 which is a 2-bedroom, 1 and ½ baths, with
view, parking included, apartment.  Other comparable apartments in the building rent for
$2,500.00. The building is located in Pacific Heights.


_____                    (signature)
William Joe, Owner

# EXHIBIT C

# Under Seal

JOSEPH P. RUSSONIELLO (CNB 44332)
United States Attorney

BRIAN J. STRETCH(CABN 163973)
Chief, Criminal Division

ALLISON DANNER (CSBN 195046)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7144
FAX: (415) 436- 6982

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  CR 07-0634 MMC |
| | ) | |
|     Plaintiff, | ) | EXHIBIT C TO THE UNITED STATES' |
| | ) | SENTENCING MEMORANDUM |
|    v. | ) | |
| | ) | |
| DANIEL HICKEY | ) | **UNDER SEAL** |
| | ) | |
|     Defendant. | ) | |
| _____ | ) | |