JOSEPH P. RUSSONIELLO (CSBN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163973)
Chief, Criminal Division

ALLISON MARSTON DANNER (CSBN 195046)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102-3495
   Telephone: (415) 436-7144
   FAX: (415) 436-7234
   Email: allison.danner@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.  CR 07-0634 MMC |
|     Plaintiff, | ) ) | UNITED STATES' REPLY TO DEFENDANT'S SENTENCING MEMORANDUM |
|    v. | ) ) | |
| DANIEL HICKEY | ) ) | Sentencing Date:  April 23, 2008 2:30 p.m. |
|     Defendant. | ) ) | |
| _____ | ) | Court:  The Honorable Maxine Chesney |

     The government files this reply to briefly address two of the arguments raised by

defendant in his sentencing memorandum filed yesterday.

     Defendant asks for a sentence of probation in a case for which the Guidelines range is 78-

87 months, the government has recommended 78 months, and the Probation Office has

recommended 54 months.  Defendant's justification for this extraordinary departure from the

Guidelines rests largely on his age and health.

     The government agrees that defendant's age and health are factors that this Court may

properly consider in determining a reasonable sentence under 18 U.S.C. § 3553(a).  These

1  considerations, however, are merely two among a host of other concerns that this Court must

2  weigh–including gravity of the offense conduct and general deterrence.  In asking for probation,

3  defendant essentially argues that a person of his age and health may commit crimes without any

4  risk of being sentenced to prison.  Such an argument flies in the face of the express language of

5  § 3553(a), which directs a sentencing court to look beyond the defendant's personal

6  characteristics.  For example, this Court must assess the nature and circumstances of the offense

7  and the need to avoid unwarranted sentence disparities among similarly-situated defendants.[1]  18

8  U.S.C. §§ 3553(a)(1) & 3553(a)(6).  A sentence that depends exclusively on one of the § 3553(a)

9  factors to the exclusion of all others simply is not a reasonable sentence.

10       Defendant's sentencing memo presumes that the Bureau of Prisons cannot adequately

11  treat defendant's illnesses–particularly his kidney disease.  However, the Bureau of Prisons

12  (BOP) maintains several facilities in which it incarcerates defendants with serious illnesses.

13  Once an individual is sentenced, BOP assesses each inmate according to his or her medical need.

14  *2008 Legal Resource Guide to the Federal Bureau of Prisons* 25 (2008), *available at*

15  http://www.bop.gov/news/PDFs/legal_guide.pdf (relevant excerpt attached hereto as Exhibit 1.)

16  Inmates in "CARE Level 4," for example, are those whose "needs are severely impaired, and may

17  require daily nursing care."  Examples of such conditions are those with cancer in active

18  treatment and dialysis.  *Id.*  Among the facilities which treat inmates with serious illnesses is the

19  FMC in Devens, Massachussetts, which provides "dialysis treatment for inmates in end-stage

20  renal failure" and renal transplant services through the University of Massachussetts.  *Id.* at 26.

21  The FMC in Rochester, Minnesota includes specialty and sub-specialty consultations through

22  physicians at the Mayo Clinic.  *Id.* at 27.  BOP, therefore, is equipped for individuals with

23  serious medical conditions.

24

25

26
_____

27       [1]  Defendant relies heavily, for example, on the case of *United States v. Baird,* 2008 WL
151258 (D. Neb. 2008).  Defendant fails to note, however, that Baird was convicted of
28  possessing fewer than 150 images of child pornography.  *Id.* at * 2.  Here, defendant possessed
thousands of images of child pornography.  His offense, therefore, is not "similar" to Baird's.

1    With regard to the defendant's request that he be allowed to self-surrender, the

2  government notes with concern the indications in defendant's medical records that he has been

3  suicidal since the inception of this investigation.  In light of the four suicides within the last six

4  months of individuals under investigation for child pornography in this District alone, this factor

5  is of significant concern.

6    For these reasons and the reasons set out in its sentencing memorandum, the government

7  respectfully requests that this Court sentence defendant to 78 months imprisonment and that he

8  be remanded to custody immediately upon pronouncement of sentence.

9

10

11  DATED: April 22, 2008                              Respectfully submitted,

12

13                                                     JOSEPH P. RUSSONIELLO
                                                       United States Attorney

14

15                                                     ALLISON M. DANNER
                                                       Assistant United States Attorney

16

17

18

19

20

21

22

23

24

25

26

27

28

USA'S SENTENCING REPLY MEMO
CR 07-0634 MMC                          -3-

# EXHIBIT 1

**U. S. Department of Justice**
Federal Bureau of Prisons



# LEGAL RESOURCE GUIDE

# TO THE

# FEDERAL BUREAU OF PRISONS

# 2008

to community release. Inmates in the residential program are housed together, to create a treatment community. Treatment is provided for a minimum of 500 hours, over a 9 to 12 month period. Required RDAP components also include a transitional drug program, when the inmate is returned to general population, and participation in community-based drug treatment, when the inmate is released to an RRC. [8]

### 8. Urine Surveillance Program

Illegal drug use compromises institutional security and threatens inmate and staff safety, and the BOP maintains careful oversight to detect and deter inmate drug use. See Program Statement 6060.08, Urine Surveillance and Narcotic Identification. Urine screening is a major element of the program. Inmates involved in community activities are routinely tested for the use of illegal drugs, and inmates are tested based on individualized suspicion of drug use. In addition, a random sample of the total inmate population at each institution is tested monthly. Any inmate testing positive for unauthorized substances is subject to sanction, including the loss of early release earned through successful RDAP completion. Any visitor or staff member found to be introducing illegal drugs or other contraband into an institution is immediately subject to arrest. See 18 U.S.C. §§ 1791, 3571, and Program Statement 5510.09, Searching and Detaining or Arresting Persons Other than Inmates.

### 9. Medical Services

#### (a) Medical Services Available to Sentenced Offenders

Every institution maintains a Health Services Unit to provide medical, dental, and mental health care. BOP policy regarding medical care and procedures for caring for inmates with medical needs is set forth in Medical Services, 28 C.F.R. pt. 549 and Program Statement 6031.01, Patient Care. Service is provided by a variety of health care professionals, including psychiatrists, physicians, nurses, physician assistants, dieticians, dentists, and pharmacists. BOP health care staff is augmented by assigned United States Public Health Service personnel. Community medical professionals are consulted as needed, and inmates are sent to community hospitals should medically necessary care be unavailable at the institution. See Program Statement 6010.02, Health Services Administration.

In making determinations regarding the appropriate institution in which to house an offender, the BOP carefully considers the offender's health status. Because of the extensive medical services the BOP provides, a defendant's medical condition generally will not preclude a sentence to BOP custody. When serious health concerns are an issue in a designation decision, the DSCC will

---

[8] In coordination with the National Institute on Drug Abuse, the BOP conducted a rigorous 3-year outcome study of the RDAP, beginning in 1991. The results were published in 2000. See BOP Office of Research and Evaluation: Treating Inmates Addiction to Drugs (TRIAD) Project: Final Report of Three-Year Outcomes: Part I, September 2000. Positive outcomes in recidivism and substance abuse relapse were found for both male and female inmates.

24

refer the case to the BOP's Office of Medical Designations and Transportation in the Health Services Division, in the Central Office. A specific institution is designated with attention to the urgency of need; institution capability; current bed space availability; and security concerns. BOP facilities are classified by the intensity level of health care resources.

Each inmates is assigned a medical "CARE Level," based on his or her medical background as described in the Presentence Report and other available information. The BOP's goal in implementing its four CARE levels is to assign inmates with greater medical needs to those facilities with more comprehensive on-site medical resources, and to provide more effective and efficient access to health care for each inmate.

Inmates with CARE Level 1 needs are generally healthy and under 70 years of age, and may have limited medical needs requiring clinician evaluation and monitoring. Examples of such conditions are mild asthma, diet-controlled diabetes, and patients with human immunodeficiency virus (HIV) who are stable and do not require medications.

Inmates with CARE Level 2 needs are those who are stable outpatients, requiring at least quarterly clinician evaluation. Examples of such conditions are medication-controlled diabetes, epilepsy, and emphysema.

Inmates with CARE Level 3 needs are fragile outpatients who require frequent clinical contacts, and/or who may require some assistance with activities of daily living, but do not require daily nursing supervision. This CARE level may include stabilization of medical or mental health conditions that may require periodic hospitalization. Other examples of this CARE Level are patients with cancer in remission less than a year, advanced HIV disease, severe mental illness in remission on medication, severe congestive heart failure, and end-stage liver disease.

Inmates with CARE Level 4 needs are severely impaired, and may require daily nursing care. Examples of such conditions are those with cancer in active treatment, dialysis, quadriplegia, stroke or head injury patients, major surgical patients, acute psychiatric illness requiring inpatient treatment, and high-risk pregnancy.

The DSCC designates those inmates with CARE Levels 1 and 2. For those inmates with CARE Levels 3 and 4, the designation decision will be made by the Office of Medical Designations and Transportation, not by the DSCC, as the medical need of the inmate is the primary factor in the designation decision.

25

*(b) Medical Referral Centers*

Medical, dental, and mental health services at each institution are provided according to the CARE Level. Six BOP facilities are federal medical referral centers (FMCs), providing specialized health services:

### FMC Butner, North Carolina

Located north of Raleigh, FMC Butner is part of the Federal Correctional Complex (FCC) and serves as a major medical and psychiatric referral center for male inmates. FMC Butner has all specialty areas of medicine and it is the primary referral center for oncology, providing chemotherapy and radiation therapy. FMC Butner also has the ability to manage a broad range of subacute and chronically ill inmates. An orthopedic surgery program is available for selected cases. Dialysis services are provided on-site.

### FMC Carswell, Fort Worth, Texas

Located in Fort Worth in the northeast corner of the Naval Air Station, Joint Reserve Base, FMC Carswell serves as the major medical and psychiatric referral center for female inmates. All specialty areas of medicine are available at FMC Carswell, through in-house staff and community-based consultant specialists. A Residential Drug Abuse Treatment Program for women is available.

### FMC Devens, Massachusetts

Located in central Massachusetts, northeast of Worcester, FMC Devens serves both medical and mental health care needs of male inmates. All specialty areas of medicine are available at FMC Devens, through in-house staff and community-based consultant specialists. Additional services provided at FMC Devens include dialysis treatment for inmates in end-stage renal failure. The University of Massachusetts provides renal transplant services through a contract with FMC Devens, to inmates who are appropriate candidates. A Residential Drug Abuse Treatment Program is available.

### FMC Lexington, Kentucky

Located just north of Lexington, FMC Lexington treats male inmates. All specialty areas of medicine are available at FMC Lexington, by in-house staff and community-based consultant specialists. FMC Lexington serves as the primary referral center for inmates with most types of leukemia and lymphoma. Outpatient forensic studies may be performed at FMC Lexington; however, FMC Lexington does not have a psychiatric mission and is not staffed with psychiatrists.

**FMC Rochester, Minnesota**

Located 80 miles southeast of Minneapolis, FMC Rochester serves as a major medical and mental health referral center for male inmates. Most specialty and sub-specialty consultations are available through the Mayo Clinic, and in other local facilities. FMC Rochester is the primary referral center for inmates with end-stage liver disease and advanced HIV infection, as well as other infectious diseases requiring long-term management. FMC Rochester provides extensive psychiatric and psychology services, including inpatient psychiatry services and forensic studies. Outpatient forensic studies are not performed at FMC Rochester.

**U.S. Medical Center for Federal Prisoners (USMCFP), Springfield, Missouri**

Located in southwest Missouri, USMCFP Springfield is a major medical and psychiatric referral center for male inmates. All specialty areas of medicine are available at USMCFP Springfield, through in-house staff and community-based consultant specialists. Springfield is the primary referral center for high security inmates. The institution maintains extensive psychiatric and psychological services, to include inpatient forensic studies. It is the major kidney dialysis center for the BOP, and contracts with the University of Missouri to provide renal transplants to inmates with living-related donors.

*(c) Voluntary Mental Health and Medical Treatment*

In accordance with Program Statements 6031.01 Patient Care; 6340.04, Psychiatric Services; and 5310.12, Psychology Services Manual, the health care mission of the BOP is to provide appropriate and necessary medical, dental, and mental health services to inmates by professional staff. As in the community, each individual inmate is responsible for self-care, and for seeking medical services when necessary. Regardless of the CARE Level of the inmate, each inmate is assigned to a Primary Care Provider Team designed to function in the same manner as a community medical team practice. Whenever possible, the inmate will see the same medical provider(s) for each appointment, ensuring continuity of care and economy of service.

Patient care is provided by appointment, scheduled in advance through request by the inmate, or scheduled by the provider for follow-up examination. A nominal co-pay for inmate-initiated medical visits is assessed to encourage responsible use of health care resources, but no inmate is denied care because of inability to pay. See Program Statement 6031.02, Inmate Copayment Program. Prescribed medications are given free of charge, in accordance with an established National Formulary. Certain over-the-counter medications may be purchased in the inmate commissary. Generally, inmates may keep prescribed medications within their possession. Controlled medication is individually dispensed by medical staff.

### (d) Managing Infectious Disease

Inmate education plays a large role in the BOP's effort to prevent and manage infectious disease. Inmates are provided information on a continuing basis to address disease prevention, both within the institution and on release. The BOP has adopted a multi-faceted program of testing, treatment, and education, and the rate of HIV and TB (tuberculosis) and other infectious diseases in the inmate population does not significantly differ from that in the community. Inmates are tested for HIV when clinically indicated. They are also tested for purposes of infectious disease monitoring, and at the request of the inmate. While inmates with HIV are housed in the general population, HIV-positive inmates who demonstrate predatory or promiscuous behavior may be isolated in order to protect other inmates from becoming infected. The BOP also maintains an active program to control and treat contagious TB disease. Each inmate is required to undergo TB screening within two calendar days of initial incarceration. All inmates who are free from prior TB infection are screened annually for newly-acquired TB infection, and when clinical staff determine that the inmate may be at risk for infection. See Procedures for Handling of HIV Positive Inmates Who Pose a Danger to Others, 28 C.F.R. pt. 541, subpt. E, and Program Statement 6190.03, Infectious Disease Management.

### 10.  Mental Health Counseling and Treatment Services

Inmates are offered a full range of mental health services, through staff psychologists and psychiatrists, as well as through community mental health specialists. See Program Statements 5310.12, Psychology Services Manual; 6000.05, Health Services Manual; 6340.04, Psychiatric Services; 5310.13, Mentally Ill Inmates, Institution Management of; and 6010.01, Psychiatric Treatment and Medication, Administrative Safeguards for. Many inmates can be treated on an outpatient basis. Inmates requiring in-patient treatment are referred to one of several psychiatric referral centers: FMC Rochester; USMCFP Springfield; FMC Butner; FMC Devens; and FMC Carswell for female inmates. Several important principles govern the care and treatment of inmates who suffer from mental disease or defect. Psychiatric medication is used only for a diagnosed psychiatric disorder for which such medication is the most appropriate treatment. See 28 C.F.R. § 549.43(b); Program Statement 6010.01, Psychiatric Treatment and Medication, Administrative Safeguards for. Psychiatric treatment is available on-site, through telemedicine evaluation, or by community consultants.

Suicide prevention is a major concern at all institutions. Program Statement 5324.08, Suicide Prevention Program, emphasizes staff training to alert staff to signs of those inmates who may be contemplating suicide, and provides for comprehensive prevention programs. Seclusion and medical restraints may be used solely for medical reasons, never for behavior modification or punishment. Such measures may be used only in the most extreme situations, and all restraint and seclusion orders must be renewed at least every 24 hours.

28

### (a) Involuntary Mental Health Treatment

The Supreme Court has held that the Due Process Clause permits prison officials to involuntarily medicate a mentally ill inmate with psychotropic medication if the inmate is dangerous to self, either actively or by being gravely disabled, or to others, and if such treatment is in the prisoner's medical interest. See Washington v. Harper, 494 U.S. 210 (1990). See also United States v. Sell, 539 U.S. 166 (2003) (holding that if medication is to be involuntarily administered solely for the purpose of restoring an inmate's competency, the decision must by made by the trial court); Administrative Safeguards for Psychiatric Treatment and Medication, 28 C.F.R. pt. 549, subpt. C, and Program Statement 6010.01. This treatment is permissible after the inmate has received notice and a hearing before an administrative panel.[9] In a psychiatric emergency, psychotropic medication may be administered involuntarily, if the medication is an appropriate treatment for the mental illness, and other alternatives would not be effective. Inmates given emergency treatment of this type will be considered for referral to a BOP psychiatric referral center.

### (b) Mental Health Programs

All institutions have available psychologists to provide inmates with counseling and other mental health services. Psychologists facilitate ongoing counseling programs, conduct personal crisis intervention, and are readily accessible to inmates as needed. Staff or contract psychiatrists are available for individual consultation.

All inmates are screened by Psychology Services staff during the institution's Admission and Orientation Program. Screening may include an individual interview. Psychologists are available for individual and group counseling, and inmates interested in these services can submit a request for participation to a staff member in Psychology Services. Mental health services are offered to treat drug use and alcohol abuse, as well as other behavioral and emotional problems. See Program Statement 5310.12, Psychology Services Manual. In addition, BOP staff in each housing unit are available for informal counseling sessions and conduct formal group counseling activities through Alcoholics Anonymous, anger management, and other groups. Inmate participation in these activities is voluntary, and encouraged.

### (c) Sex Offender Management and Treatment

The Bureau of Prisons maintains a comprehensive sex offender management strategy, implemented to effectively manage its population of sex offenders, and manage the risks posed by these offenders to the general public. With the passage of the Walsh Act, as codified in

---

[9]Medication may be administered without an administrative hearing for emergencies in which a person is suffering from a mental illness which creates an immediate threat of bodily harm to self or others, serious destruction of property, or extreme deterioration of functioning secondary to psychiatric illness. See 28 C.F.R. §549.43(b).

18 U.S.C. § 3621(f), Sex Offender Management, the BOP has further expanded its monitoring, evaluation, and treatment programs for sex offenders. As required by the Walsh Act, a specialized sex offender program is offered in each BOP region. Inmates with a history of sexual offenses may be designated to the Sex Offender Management Program (SOMP), at one of six institutions: FMC Devens; United States Penitentiary (USP) Marion; USP Tucson; Federal Correctional Institution (FCI) Seagoville; FCI Petersburg; and FCI Marianna. Assignment is made in accordance with the security level of the individual.

An inmate amenable to treatment is offered participation in the Sex Offender Treatment Program (SOTP-NR) offered at all SOMP institutions. SOTP-NR offers inmates individualized non-residential treatment, ordinarily involving six to eight hours of programming per week, over a six-month period. All participation in non-residential treatment services is voluntary.

Inmates at any BOP institution may choose to volunteer for an intensive residential sex offender treatment program (SOTP-R) offered at FMC Devens. The BOP reviews each application for the SOTP-R, considering such factors as the seriousness of the inmate's sexual offending history, the inmate's disciplinary record, and the amount of time remaining on the inmate's sentence. The SOTP-R is a therapeutic community, housed in a 112-bed specialized unit. The program employs a wide range of cognitive-behavioral and relapse prevention techniques to help the sex offender manage his sexual deviance both within the institution and in preparation for release. Ordinarily, participants complete the program in 12 to 18 months.

BOP assists the released sex offender with information regarding community treatment programs available to them upon release from federal custody. See 18 U.S.C. § 4042(c), and Program Statement 5141.02, Sex Offender Notification and Registration. In addition, BOP informs state and local law enforcement agencies of the release of a sex offender, and notifies the releasee of his legal obligation to register with the local authorities, as required by the Sex Offender Registration and Notification Act, enacted as part of the Walsh Act.

### D. Visiting, Telephones, and Correspondence

#### 1. Visiting

Inmates are encouraged, throughout their incarceration, to maintain ties to their family and friends in the community. Inmates are ordinarily permitted face-to-face visitation with approved family and friends, and confidential visitation with attorneys. See Program Statement 5267.08, Visiting Regulations. Conjugal visits are not permitted. Each institution schedules its own visiting hours, and inmates receive this information during the orientation process so they can advise family members and others how and when they may visit. Visitors should consult the BOP website for individual institution visiting instructions and scheduled hours. Pretrial inmates may receive visits in accordance with the local institution's guidelines on visiting, however, staff